CASE No. 1086.

### PRATER v. WHITTLE.

1. Where a testator by will disposed of his entire estate, and subsequently sold all of his lands and part of his personalty, and then died possessed of some personal property, the will is not revoked and should be admitted to probate. How revocation is effected, expressly or by implication, considered.

2. Upon the issue of will or no will on appeal from the Probate Court, the trial is had *de novo* in the Circuit Court, and, therefore, a finding of facts by the Probate judge is not a matter to be considered by this court on appeal.

3. The probate of a will settles all questions as to its proper execution, but does not determine its construction, nor the validity of its clauses. Therefore, on application to prove a will, a revocation which does not wholly defeat it presents no question for the Probate Court to determine.

Before TOWNSEND, J., Edgefield, October, 1877.

Milton A. Prater, executor of James M. Whittle, deceased, against Rebecca Whittle, the widow of testator, and his other heirs; application to prove will in solemn form, after demand by the widow that it should be so proven. The trial was had in the Court of Probate for Edgefield, in 1872. Other facts are stated in the opinion.

*Mr. Ernest Gary*, for appellants.

*Messrs. A. J. Norris*, and *Youmans*, attorney-general, contra.

September 24th, 1881. The opinion of the court was delivered by

McGOWAN, A. J. On March 9th, 1870, James M. Whittle executed his will, by which he gave to his son-in-law, Milton A. Prater, almost his entire estate, either immediately upon the death of the testator or in remainder after the death of the defendant Rebecca Whittle, and appointed the said Prater executor.

On April 3d, 1871, the said Whittle executed two other papers—a deed, whereby he conveyed his entire real estate, and a bill of sale, whereby he transferred certain personal property to the said Prater, and received for the said property Prater's note for $4,900.

In 1871 James M. Whittle died, and Prater, as executor, proposed to prove the will. The widow (Rebecca) and others

objected, and an issue was made in the Probate Court for Edgefield county to test the validity of the will. The Judge of Probate heard the case, took the testimony and decided that James M. Whittle was competent to make a will; that the paper propounded had been executed without fraud or undue influence and with all legal formalities as his last will and testament, but he refused to admit it to probate upon the ground that *the deed and bill of sale of his property,* executed by testator subsequently, operated as an implied revocation of the will. The plaintiff, Prater, appealed to the Circuit Court. By consent, it seems, Judge Townsend heard the case without a jury, upon the testimony taken by the Probate judge, and reversed the judgment of the Probate judge. The defendants appeal to this court upon the ground that "His Honor erred in deciding that the deed and bill of sale from James M. Whittle to Milton A. Prater did not wholly revoke the will of the said James M. Whittle."

The single question in the case is whether the execution of the deed and bill of sale by the testator, after he executed his will, operated as a revocation of the will so entirely as to exclude it from probate and leave the estate intestate. This is simply a question of probate, not in the least affected by the provisions of the paper as being just or unjust, or by the proper construction thereof in consequence of changes in the property. Where it appears that a will has been properly executed by a person of sufficient capacity, exercising volition, no matter how it may disappoint just expectations, or how unequal it may be, it is the testator's will, and will be so declared. The law allows a person to declare in his life-time what disposition shall be made of his property after his death, only provided he is of sound mind and makes the declaration according to formalities carefully prescribed. Such declaration so made is his will, which, for many reasons, is regarded an instrument of a solemn character, and not to be lightly revoked or set aside. There is no doubt here of the execution of the paper by a person competent and according to all the required formalities. The only question is whether it *was afterwards revoked.* The statute declares that "no will or testament in writing of any real or

personal property, or any clause thereof, shall be revocable but by some other will or codicil in writing, or other writing declaring the same, attested and subscribed by three witnesses as aforesaid, or by destroying or obliterating the same by the testator himself or some other person in his presence and by his direction and consent." *Sec. 7, ch. 86, Gen. Stat. 443.* This informs a testator who desires to revoke his will what is necessary to be done. As we understand it, this provision not only prescribes the necessary formalities for the revocation of a will duly executed, but declares that nothing else shall have that effect.

Our courts have held in accordance with this view. In *Floyd* v. *Floyd*, 13 *Strob.* 54, it is said: "A will executed according to our acts of 1789 and 1824 can only be revoked in three ways: 1. By an instrument in writing, executed with the same solemnities as the will. 2. By obliteration. 3. By burning and destroying; and, 4, impliedly by marriage and birth of issue."

In *Watkins* v. *Watkins*, 13 *Rich.* 66, it is said: "By the act of 1789 no devise is revocable except by another will or writing, attested by three witnesses, declaring the revocation, or by the destruction or obliteration of the will by the testator himself, or by some other in his presence and by his direction and consent." It is clear that this case was not brought within either of the requirements of the statute by the mere execution of the deed and bill of sale, and it follows that there was certainly no express revocation.

It is urged, however, that, notwithstanding the statute, a revocation may be implied from such facts as show a total change in the intentions of the testator. It is true that there is one state of facts which the law expressly declares shall be taken to be a revocation. Section 8, chapter 86, of the *Gen. Stat.* provides that "if any person making a will shall afterwards marry and die, leaving his widow or having issue, unless the will shall have been made in contemplation of marriage, expressed on its face, and shall contain a provision for future wife and children, if any, it shall be deemed and taken to be a revocation to all intents and purposes," &c.

But, excepting this case, specially provided for, it would seem that revocations to be implied from facts supposed to show a change of intention on the part of testator—always uncertain and doubtful—are excluded by the express words of the statute, which positively declares that "no will or testament in writing shall be revocable but by some other will," &c. If the statute left the subject of implied revocations precisely as they stood before its passage, it is difficult to understand what was accomplished by it. Upon this subject we incline to agree with what was said in regard to a similar statute of the State of Vermont in the case of *Graves* v. *Sheldon,* reported in 15 *Am. Dec.* 657: "I cannot admit that an alteration in the circumstances of the devisor will, in any case, amount to a revocation in law, or that an intended alteration in his estate will have that effect. It is true that the intention of the testator is to be principally regarded, but that intention is to be inferred from such facts only as the statute authorizes us to notice. * * * Does the fact of a change in a man's circumstances afford a stronger presumption of an alteration of his intentions than the fact of his preserving his will unaltered and unrevoked does of his intentions remaining the same? I confess I am unable to see it in that light. The statute has secured the rights of widows, unprovided for, and of posthumous children. The necessity of the rule, if it exists in England, is thus far obviated here. The only implied revocations, therefore, known to the laws of this State are such as result *ex necessitate rei.* It is said by Justice Buller, in his argument in the case of *Goodtitle* v. *Otway,* 1 *Bos. & P.* 615, that there is not a maxim in our law better established than this: that all implications are *ex necessitate;* that upon any other ground they would be capricious and arbitrary."

In the very nature of the case there must be such a thing as a revocation from necessity. A will is ambulatory, and when the whole estate is disposed of in the life-time of the testator there is nothing left for the will to act upon when it speaks. "If A. devise all his estate to B., and afterwards alienates the whole of it to C., it is necessarily a total revocation, for there is nothing for the will to act upon. If he devise Blackacre to B. and Whiteacre to C., and afterwards dispose of Blackacre,

it is a revocation *pro tanto*. Revocation *pro tanto* may operate either by altering the quality of the estate in abridging the inter- est or by diminishing the quantity of the thing demised." In the case before us, the whole estate was not disposed of by the deed and bill of sale. The Circuit judge found that all the land devised by the will was covered by the deed, but as to the personal property he held "that it does not appear that the bill of sale transferred all of it. For aught this court knows there may have been considerable personal property left for disposition under the will. Besides there was a sale of the real and per- sonal property conveyed to Milton A. Prater for the price of $4,900, and at the time of the execution of the deed, a note for the purchase was taken to secure its payment."

It is true the argument was made here that this court should assume the fact to be as held by the Probate judge, and not as found by the Circuit judge, upon the ground that the testimony used having been taken by the Probate judge he must be assumed to have had a better opportunity to estimate its proper force. The relation of the Probate judge to the case was in no way analogous to that of a referee appointed to hear and determine issues referred. Upon appeal from the Probate Court, on a question of will or no will, issues of fact are tried *de novo* in the Circuit Court. The act allowing the appeal pro- vides as follows: "When such certified copy shall have been filed in the Circuit Court, such court shall proceed to the trial and determination of the questions according to the rules of law ; and if there shall be any questions of fact or title to land to be decided, issue may be joined thereon under the direction of the court, and a trial thereof had by jury." *Code*, § 62.

The act of 1839 required an issue to be made in the Circuit Court. 11 *Stat.* 47. In the case of *Myers* v. *O'Hanlon*, 12 *Rich. Eq.* 203, Chancellor Carroll said: "In truth, the valid- ity of contested wills is tried and determined practically in the Court of Common Pleas. The primary decree of the ordinary in such controversies is regarded by the parties as comparatively immaterial. It is upon appeal to the law courts that the actual contest, the substantial trial, really occurs. In legal contempla- tion, the Court of Common Pleas has but appellate jurisdiction

in such cases. But by the express provision of the act of 1839, if an issue of fact is involved the cause is to be *tried anew*, as though it were an original cause in that court, and the parties are at liberty to raise new questions never considered by the ordinary, or even made before him." *Peeples* v. *Smith,* 8 *Rich.* 90. That the parties did not call for a jury and allowed the judge to decide the case on the testimony already taken, cannot alter the nature of the issue. The judgment of the Circuit Court alone is under appeal here.

The probate of a will settles all questions as to the formalities of its execution and the capacity of the testator, but does not affect the validity or invalidity of any particular clause or settle any question of construction. A revocation, therefore, which does not wholly defeat the will, presents no question for the Probate Court to determine. All questions as to the construction of the will must be settled by subsequent proceedings in the equity jurisdiction. So little has the Probate Court to do with the contents of a will or its construction, that it is laid down as an elementary principle that "the bare nomination of an executor, without giving any legacy or appointing anything to be done by him, is sufficient to make it a will, and as a will it is to be proved." 1 *Wms. Ex.* 185; *Jolliffe* v. *Fanning & Phillips,* 10 *Rich.* 200. In this case Judge Withers said: "If the paper be duly executed by one competent, agreeably to the forms prescribed and in the presence of the requisite number of credible witnesses, and contain the revocation of all prior wills and the appointment of an executor, (as the testamentary paper before us does,) *and be silent in fact or for want of validity as to all other matters,* it is a will, and must be admitted to probate accordingly."

The judgment of this court is that the judgment of the Circuit Court be affirmed, and the case remanded to the Probate Court of Edgefield county for such action as may be necessary to carry out the principles herein announced.

SIMPSON, C. J., and McIVER, A. J., concurred.